Anita Y. Milanovich (Mt. No. 12176)
THE BOPP LAW FIRM, PC
1627 West Main Street, Suite 294
Bozeman, MT 59715
Phone: (406) 589-6856
Email: aymilanovich@bopplaw.com
*Attorney for Plaintiff*

James Bopp, Jr. (Ind. No. 2838-84)*
Justin McAdam (Ind. No. 30016-49)*
THE JAMES MADISON CENTER FOR
FREE SPEECH
The National Building
1 South Sixth Street
Terre Haute, IN 47807
Phone: (812) 232-2434
Fax: (812) 235-3685
Email: jboppjr@aol.com
jmcadam@bopplaw.com
*Attorneys for Plaintiff*

*Pro hac vice application granted
September 4, 2014.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| **Montanans for Community Development**, <br><br> *Plaintiff*, <br><br> v. <br><br> **Jonathan Motl**, *et al.*, <br> *Defendants*. | Case No. 6:14-cv-00055 <br><br> **Memorandum Supporting Plaintiff's Motion for Protective Order** |

### Introduction

This case is a First Amendment pre-enforcement challenge that seeks to secure relief from Montana campaign finance laws that chill constitutionally

protected speech, including Montanans for Community Development's (hereinafter "MCD") ads.

The parties are presently in discovery. A dispute has arisen regarding *Defendants' First Interrogatories and Requests for Production of Documents Propounded to Plaintiff*, attached to Defendants' Motion to Compel as Exhibit A, (Doc. 55-1), and MCD's response, attached to Defendants' Motion to Compel as Exhibit B, (Doc. 55-2). In particular, while MCD has substantively responded to Interrogatories 17 and 18 and Document Request 15, MCD contends that the remainder of Defendants' (hereinafter "Commission") discovery requests exceed the scope of agreed upon discovery and, in any event, seek constitutionally protected information without justification or tailoring and indeed, is largely irrelevant. Because the Commission has made clear to MCD's counsel that it believes it is entitled to the information it seeks, (Milanovich Decl., Doc. 58, ¶ 25), MCD seeks a protective order from this Court limiting the permissible scope of discovery in this matter. Pursuant to Local Rule 7.1, Plaintiff's counsel conferred with Defendant's counsel, who oppose Plaintiff's Motion for Protective Order.

# Facts

Discovery in this matter was initiated with a pre-trial conference on December 18, 2014. In anticipation of that conference, the parties filed with this Court a Rule 26(f) Report. (Doc. 47.). Regarding the scope of discovery, counsel provided the following paragraphs for their respective clients:

> Plaintiff contends that discovery is needed regarding only Count XIV of its complaint. This will necessitate discovery into the investigatory policies, procedures, and practices of the Commissioner of Political Practices. Discovery is not needed on Plaintiff's other claims because the claims concern the constitutionality of various Montana statutes and regulations and are questions of law.

> Defendant intends to conduct discovery on the formation, authority, mission, directives, goals, policies, and activities of Plaintiff and relevant third parties, and as otherwise needed in defense of Plaintiff's claims.

(*Id.* at 2, ¶ 3(a).) At the December 18 pre-trial conference, this Court read MCD's contention regarding the scope of discovery out loud and asked the Commission's counsel if they agreed that discovery should be so limited. (Milanovich Decl., Doc. 58, at ¶ 2.) The Commission's counsel agreed. (*Id.*) Discovery was set to close July 30, 2015. (Doc. 52 at 2.)

MCD served its first discovery requests on the Commission in mid-January 2015, (Milanovich Decl., Doc. 58, at ¶ 4), with receipt of satisfactory responses to

those requests accomplished on May 26, 2015, after numerous delays for which extensions were often assumed and rarely requested in advance.[1] (*Id.* at ¶ 32.)

The Commission served its first discovery requests on March 27, 2015. (*Id.* at ¶ 9.) MCD used the 30 days provided to it under the Federal Rules to review and determine substantive responses, responsive documents, and objections to the Commission's requests, (*id.* at ¶¶ 15, 18), and requested a short, 7-day extension due to counsel's workload, which was freely granted. (*Id.* at ¶ 21.) It served its response on May 7, 2015. (*Id.* at ¶ 24; MCD Responses, Doc. 55-2.)

MCD asserted numerous objections, with the broadest objection stating that the discovery the Commission sought exceeded the scope agreed to in December. (MCD Responses, Doc. 55-2, at 2, 24-25.) MCD also objected to much of the discovery requests because they implicated First Amendment expressive and associational rights and had a chilling effect on MCD's speech and associations. (*Id.* at 3-4, 26-27.) MCD also objected on relevance grounds, both generally and specifically in each request. (*See, e.g., id.* at 2-3, 6, 25-26.) And finally, MCD

---

[1]Because of these delays, the parties have set a fluid amended complaint/answer deadline to accommodate MCD's desire to conclude depositions before dismissing, revising, or adding any counts. (Milanovich Decl, Doc. 58, ¶ 16.)

asserted vagueness objections to specific discovery requests. (*See, e.g., id.* at 9.) In light of its objections, MCD only provided substantive responses to requests that would survive its broadest objection, that is, requests relating to Count XIV. (*Id.* at ¶ 24.) MCD did not seek a protective order from this Court because it did not know what compromise could be reached and whether that agreement would be insufficient, as this Court requires. (*Id.* at ¶ 24; *see* Doc. 52 at 9.)

Late in the afternoon of May 13, 2015, the Commission's counsel emailed MCD's counsel seeking a prompt phone conference to discuss MCD's response. (Milanovich Decl., Doc. 58, ¶ 25.) During the call conducted the afternoon of May 14, 2015, the Commission asserted it had no recollection of limiting the scope of discovery, and that it was entitled to the information it sought. (*Id.*) MCD disagreed but offered to consider waiving its objection regarding the scope of discovery because it is a factual dispute resolvable only by this Court. In exchange, MCD asked that the Commission agree to explain why the information requested in each interrogatory and request for production was relevant under the limitations imposed by the First Amendment and Federal Rule of Civil Procedure 26. (*Id.*) Shortly after the call, the Commission offered to withdraw Interrogatory 1 and 5 "at this time"; to revise Interrogatory 10 to exclude information about the

purpose of any other entity MCD directors are associated with and what their

capacity with that associated entity is; and to limit Document Request 3 to only

disclosure of those donors funding the ads. (*Id.*) It also indicated it would consider

a protective order to keep MCD's responses confidential. (*Id.*) MCD advised the

Commission that it would consider the offer and provide a response within a few

days. (*Id.* at ¶ 26.)

　　MCD was prepared to offer a compromise to the Commission that would

resolve much of the dispute by waiving the scope of discovery objection in

exchange for an explanation from the Commission that their requests satisfied

First Amendment considerations as articulated in *Perry v. Schwarzenegger,* 591

F.3d 1147 (9th Cir. 2009). (*Id.* at ¶ 26.) MCD would shorten its response time,

furnish a privilege log[2] if it remained necessary, and thereby narrow if not eradi-

cate the dispute for quick resolution by this Court. (*Id.* at 26.) But on the day MCD

---

[2]MCD did not provide the Commission with a log because its broadest
objection relating to the scope of discovery did not necessitate it. However, MCD
has prepared a copy of that privilege log for the Court so that, should this Court
decide to resolve this matter on MCD's narrower First Amendment objection, the
Court has before it all the information necessary. It is attached as Exhibit 1. While
the quantity of documents seems few, First Amendment protections do not turn on
how much disclosure is occurring, but that speech or association are chilled
because of that disclosure. *See Perry,* 591 F.3d at 1160.

**Memorandum**
**Supporting Motion for**
**Protective Order**　　　　　　　-6-

had arranged with the Commission to discuss the issue, the Commission filed its

Motion to Compel.[3] (*Id.* at ¶ 30.) Since filing its Motion to Compel, the Commission has indicated its intent to depose MCD's board members in July. (*Id.* at ¶¶ 33-34.) In response to the Commission's Motion to Compel and in light of prospective depositions, MCD has filed the Motion for Protective Order this memorandum supports, (Doc. 56), seeking to limit the scope of all discovery—including any prospective interrogatories, document requests, and depositions—in accordance with party agreements and the First Amendment.

## Argument

### I. The Commission's Discovery Requests Exceed The Agreed Upon Scope of Discovery.

At the December 18, 2014, pretrial conference, this Court specifically asked the Commission if it agreed with MCD's contention that discovery should be limited to Count XIV, and they did. (Milanovich Decl., Doc. 58, ¶ 2.) This agreement renders Interrogatories 1-16 and Document Requests 1-14, which do

---

[3]Since filing its Motion to Compel, the Commission has requested MCD designated a Rule 30(b)(6) witness and make available MCD witnesses Bill Coate, Ed Walker, and James Pennington for deposition in July. (Milanovich Dep., Doc. 58, ¶¶ 33-34.) MCD asks that this Court's protective order restrict information solicited at such depositions, as well.

not solicit information relevant to Count XIV's Investigatory and Publications Provisions, outside the scope of discovery.[4] MCD requests this Court issue a protective order prohibiting the Commission from pursuing any discovery that exceeds the December 18 agreement.

## II. The Information the Commission Seeks is Constitutionally Protected.

### A. The First Amendment Protects Political Association and Expression, Even in the Context of Discovery.

Additionally, MCD asserts that much of the information the Commission seeks is protected by the First Amendment.

The First Amendment protects political association as well as expression. *Buckley v. Valeo,* 424 U.S. 1, 15 (1976). The "freedom to associate with others for the common advancement of political beliefs and ideas is . . . protected by the First and Fourteenth Amendments." *Kusper v. Pontikes,* 414 U.S. 51, 56–57 (1973). "An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those

---

[4] It is for this reason that MCD did not provide any substantive responses to Interrogatories 1-16 and only responded to Document Request 15, as well as Document Request 13 insofar as it implicated Interrogatories 17 and 18. (*See* MCD Responses, Doc. 55-2.)

ends were also not guaranteed." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984).

This right can be stifled not only through direct government regulation but also through indirect, subtler forms of government action. *NAACP v. Alabama,* 357 U.S. 449, 461 (1958); *NAACP v. Button*, 371 U.S. 415, 433 (1963); *Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960). For this reason, the United States Supreme Court has proscribed, for example, compelled disclosure of membership and contribution lists, holding that "the immunity from state scrutiny of membership [and contribution] lists . . . [is] so related to the right of members [and donors] to pursue their lawful private interests privately and to associate freely with others in so doing as to come within the protection" of the First Amendment and Fourteenth Amendments. *NAACP*, 357 U.S. at 466; *see also Buckley*, 424 U.S. at 66 ("Our past decisions have not drawn fine lines between contributors and members but have treated them interchangeably"). There exists a "strong associational interest in maintaining the privacy of [donor] lists of groups engaged in the constitutionally protected free trade in ideas and beliefs." *Gibson v. Florida Legis. Investigation Comm.*, 372 U.S. 539, 555 (1963); *see also Am. Civil Liberties Union, Inc. v. Jennings*, 366 F. Supp. 1041, 1055 (D.D.C. 1973) ("It is

well established that the requirements of . . . reporting of membership lists cast a chilling effect upon an individual's right to associate freely and to voice personal views through organizational ties"). So whenever the government acts, it must be prepared to justify its actions "not only when it imposes direct limitations on associational rights, but also when those actions 'would have the practical effect "of discouraging" the exercise of constitutionally protected political rights.'" *Perry v. Schwarzenegger,* 591 F.3d 1147,1159-60 (9th Cir. 2010) (internal citations omitted).

Since government actions, whether direct or indirect, can "have a chilling effect on, and therefore infringe, the exercise of fundamental rights," they "must survive exacting scrutiny." *Buckley,* 424 U.S. at 64; *Perry,* 591 F.3d at 1160. Under exacting scrutiny, "the Government may regulate protected speech only if such regulation promotes a compelling interest and is the least restrictive means to further the articulated interest." *McCutcheon v. FEC*, 134 S.Ct. 1434, 1444 (2014). "In the First Amendment context, fit matters." *McCutcheon*, 134 S. Ct. at 1456.

**B.  Compelled Disclosures Like the Commission's Discovery Requests Fail Exacting Scrutiny.**

Compelled disclosures of associations and internal strategies during discovery, like the ones sought here, can have a chilling effect. *Perry*, 591 F.3d at

1160. *See AFL–CIO v. FEC,* 333 F.3d 168, 175 (D.C. Cir. 2003) ("The Supreme

Court has long recognized that compelled disclosure of political affiliations and

activities can impose just as substantial a burden on First Amendment rights as can

direct regulation."). For this reason, the United States Supreme Court has recog-

nized that discovery in free speech cases "must be objective, focusing on the

substance of the communication rather than amorphous considerations of intent

and effect." *FEC v. Wisconsin Right to Life*, 551 U.S. 449, 469 (2007) ("*WRTL-

II*") (*citing Buckley v. Valeo,* 424 U.S. 1, 43-44 (1976)). Free speech cases "must

entail minimal if any discovery, to allow parties to resolve disputes quickly

without chilling speech through the threat of burdensome litigation." *WRTL-II*,

551 U.S. at 469 (*citing Virginia v. Hicks*, 539 U.S. 113, 119 (2003)).[5] In the Ninth

---

[5]Chief Justice Roberts' plurality opinion is the controlling opinion in *WRTL-II.* As the Ninth Circuit has recognized, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Lair v. Bullock*, 697 F.3d 1200, 1204-5 (9th Cir. 2012) (*quoting Marks v. United States*, 430 U.S. 188, 193 (1977). Justice Scalia, joined by Justices Kennedy and Thomas, concurred rather than joined in the Roberts opinion because the Chief Justice and Justice Alito did not reverse *McConnell* and strike down the statute at issue facially but simply struck down an application of the statute. *WRTL-II,* 551 U.S. at 504 (Scalia, J., concurring). The Roberts opinion—striking down one application of the statute—is a narrower subset of the Scalia opinion—striking down all applications of the statute. So under *Marks,* the Roberts opinion is controlling.

Circuit, "[d]isclosures of political affiliations and activities that have a 'deterrent effect on the exercise of First Amendment rights' are subject to exacting scrutiny. *Perry,* 591 F.3d at 1160.

In applying exacting scrutiny in the discovery context, the Ninth Circuit, treating the First Amendment rights at issue as a First Amendment privilege under Federal Rule of Civil Procedure 26(b)(1), *id.* at 1160, has established the following framework:

> The party asserting the privilege "must demonstrate . . . a 'prima facie showing of arguable first amendment infringement.'"[6] . . . "This *prima facie* showing requires appellants to demonstrate that enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Id.* at 350. "If appellants can make the necessary *prima facie* showing, the evidentiary burden will then shift to the government . . . [to] demonstrate that the information sought through the [discovery] is rationally related to a compelling governmental interest . . . [and] the 'least restrictive means' of obtaining the desired informa-

---

[6]MCD challenges the legal correctness of this initial requirement of harm by those asserting a First Amendment right/privilege. Exacting scrutiny simply requires a First Amendment speech and associational right to be implicated and places the burden squarely on the government to justify the burdens or proscriptions placed on that right. *See McCutcheon,* 134 S.Ct. at 1452 ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions.") (*quoting United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803, 816 (2000)). However, the Ninth Circuit's decisions are mandatory for this Court, so MCD presents its arguments consistent with Ninth Circuit jurisprudence.

tion." . . . . More specifically, the second step of the analysis is meant to make discovery that impacts First Amendment associational rights available only after careful consideration of the need for such discovery, but not necessarily to preclude it. The question is therefore whether the party seeking the discovery "has demonstrated an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association."

*Perry,* 591 F.3d at 1160-61 (internal citations omitted). Considerations to the analysis may include:

the importance of the litigation, the centrality of the information sought to the issues in the case, the existence of less intrusive means of obtaining the information, and the substantiality of the First Amendment interests at stake, . . .

*Id.* at 1161 (internal citations omitted). Of crucial importance is that:

the party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1). The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable.

*Id.* at 1161.

### 1. MCD Can Make A Prima Facie Showing Of Harm.

For the *Perry* court, the declarations furnished by those asserting First

Amendment protection demonstrated a prima facie case of harm because they

showed that communications and associations would be drastically altered if the

information at issue were disclosed. Both MCD President Bill Coate and board member Ed Walker assert similar harm. Both individuals state that "if this court compels MCD to divulge—either by responding to questions or by producing documents—non-public communications and associations and that it has had either internally or with donors, volunteers, candidates, and third party groups or entities, [they] will drastically alter how [they] communicate and associate as president and board member in the future." (Coate Decl., Doc. 59, ¶ 5; Walker Decl., Doc. 60, ¶ 5.) They also both assert that "[i]f such communications and associations can be publicly known," they "will be less willing to associate or engage in communications at board meetings, during phone calls, in emails, and in any other contact with other MCD board members, volunteers, donors, candidates, or outside individuals or groups," and "less likely to serve on another board or be involved with another committee." (Coate Decl., Doc. 59, ¶¶ 5-6; Walker Decl., Doc. 60, ¶¶ 5-6.) Indeed, in MCD's responses to Defendants' discovery requests, Mr. Coate affirmed that many of the requests seek the same information the Commission asserted would be treated confidential in an investigatory context. (*See, e.g.,* MCD's Responses, Doc. 55-2, at 16.) Here, MCD has *not even yet engaged* in its constitutionally protected right to speak and it is asked to publicly

disclose associations (for example, with volunteers and third parties) and internal strategies (for example, minutes). The potential for this disclosure extends to depositions, as well. The Commission's effort to discover through this lawsuit MCD's expressive and associations chills those rights as much as any direct regulation might. (*Id.*)

As in *Perry*, the Coate and Walker Declarations, coupled more broadly with the chill Mr. Coate asserted the Commission's discovery requests imposed on MCD in MCD's responses to discovery, "create[] a reasonable inference that disclosure would have the practical effects of discouraging political association and inhibiting internal campaign communications that are essential to effective association and expression." *Perry*, 591 F.3d at 1163.

The Coate and Walker Declarations also reinforce what *Perry* recognized as a matter of law: that "[a] protective order limiting dissemination of this information will ameliorate but cannot eliminate these threatened harms." *Id.* at 1164. (*See* Coate Decl., Doc. 59, ¶ 7; Walker Decl., Doc. 60, ¶ 7.) MCD has made a prima facie showing that the disclosures sought from the Commission will have a chilling effect on protected activities if compelled by this Court.

**2.    The Commission Cannot Demonstrate A Sufficient Need For the Information Sought To Justify the Deterrent Effect of Disclosure.**

Once a prima facie showing of infringement has been made, "the evidentiary burden shifts to the [Commission] to demonstrate a sufficient need for the discovery to counterbalance that infringement." *Id.* at 1164. Relevance is not enough. *Id.* at 1161. The Commission "must show that the information sought is *highly relevant* to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1). *Perry*, 591 F.3d at 1161 (emphasis added). The Commission must "'demonstrate[] an interest in obtaining the disclosures . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association.'" *Id.* at 1164 (*quoting NAACP,* 357 U.S. at 463).

Preliminarily, the information the Commission seeks—information about **1)** donors (Interrogatory 1 and Document Requests 3, 7, and 13), **2)** additional information about MCD's formation (Doc. Req. 1, 2, 4-5, 13), spending (Interrogatories 2-4, Doc. Req. 12, 13), and internal operating procedures, both generally (Interrogatories 5, 12, 15, Doc. Req. 13), and specific to the ads (Interrogatory 6, Doc. Req. 9, 13), and **3)** MCD's, its directors', and other associated individuals' associations with either MCD, other entities, candidates, and donors (Interrogato-

ries 7-9, 10-11, 13-14, 16; Doc. Req. 6, 8, 10, 11, and 13)—has little to do with MCD's claims that Montana's political committee definition, contribution definition, expenditure definition, and investigatory and publication procedures are unconstitutional. Defendants' offer to temporarily suspend two interrogatories and to revise an interrogatory and request for documents does not alter this fact.

None of this information is relevant (nor can it constitutionally be relevant) to MCD's political committee status under Montana law. *See* MCA § 13-1-101(22); *WRTL-II,* 551 U.S. at 469 (holding that campaign finance regulations that look beyond a communication to things such as "intent and effect" are unconstitutional). But even if it were relevant, Defendants must still *additionally* show that they have a sufficient need for the information sought and that their requests have been tailored to that need. And MCD believes they cannot. For example, the additional Montana Secretary of State filings[7] the Commission seeks can be secured from those agencies if desired. *See Perry*, 591 F.3d at 1164 ("Plaintiffs can obtain much of the information they seek from other sources, without intruding on protected activities."). Whether MCD's planned ads constitute an "expenditure" under MCA § 13-1-101(11)(a), making MCD a political committee can be

_____

[7]MCD has already furnished copies of its Articles of Incorporation, (Doc. 26-1), and its Bylaws. (Doc. 1-4.)

determined from the four corners of the ads themselves. Information about donors to, strategies of, and associations of MCD have no bearing on this inquiry. *See WRTL-II*, 551 U.S. at 469. So Defendants have not tailored their requests to a sufficient need. *Perry*, 591 F.3d at 1165. "The information [the Commission] seek[s] is attenuated from the issue of [this case], while the intrusion on First Amendment interests is substantial." *Id.* at 1165.

## Conclusion

For the reasons above, Plaintiff MCD respectfully requests that this Court grant *Plaintiff's Motion for Protective Order* and limit all discovery in this matter to inquiries relating to Count XIV and that are tailored to a compelling governmental need.

Dated: June 4, 2015

Respectfully Submitted,

/s/Anita Y. Milanovich

James Bopp, Jr. (Ind. No. 2838-84)*
Justin McAdam (Ind. No. 30016-49)*
THE JAMES MADISON CENTER FOR
FREE SPEECH
The National Building
1 South Sixth Street
Terre Haute, IN 47807
Phone: (812) 232-2434
Fax: (812) 235-3685
Email: jboppjr@aol.com
        jmcadam@bopplaw.com
*Attorneys for Plaintiff*

Anita Y. Milanovich (Mt. No. 12176)
THE BOPP LAW FIRM, PC
1627 West Main Street, Suite 294
Bozeman, MT 59715
Phone: (406) 589-6856
Email: aymilanovich@bopplaw.com
*Attorney for Plaintiff*

*Pro hac vice application granted
September 4, 2014.

## Local Rule 7.1(d)(2)(E) Word Verification Certification

I certify that this memorandum of law complies with Local Rule 7.1(d)(2)(A). It contains 3806 words, as verified by the word count feature of WordPerfect X5, the word processor that created it.

/s/ Anita Y. Milanovich
Anita Y. Milanovich

**Certificate of Service**

I hereby certify that on June 4, 2015, I electronically filed the foregoing

with the Clerk of the Court for the United States District Court for the District of

Montana by using the Court's CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the CM/ECF system.


s/ Anita Y. Milanovich