Anita Y. Milanovich (Mt. No. 12176)
THE BOPP LAW FIRM, PC
1627 West Main Street, Suite 294
Bozeman, MT 59715
Phone: (406) 589-6856
Email: aymilanovich@bopplaw.com
*Attorney for Plaintiff*

James Bopp, Jr. (Ind. No. 2838-84)*
Justin McAdam (Ind. No. 30016-49)*
THE JAMES MADISON CENTER FOR
FREE SPEECH
The National Building
1 South Sixth Street
Terre Haute, IN 47807
Phone: (812) 232-2434
Fax: (812) 235-3685
Email: jboppjr@aol.com
jmcadam@bopplaw.com
*Attorneys for Plaintiff*

*Pro hac vice application granted
September 4, 2014.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| **Montanans for Community Development**, <br><br> *Plaintiff*, <br><br> v. <br><br> **Jonathan Motl**, *et al.*, <br> *Defendants*. | Case No. 6:14-cv-00055 <br><br> **Reply Supporting Plaintiff's Motion for Protective Order** |

## Introduction

Contrary to the Commission's perceptions and characterizations, the issue

before this Court is not some sort of litigious cat-and-mouse game for MCD. It is

not an effort to engage in delay tactics, (Comm'n Resp. at 3)—the strategic benefit MCD knows not of—to somehow "hide," (Comm'n Resp. at 2), or to "str[i]ng the State along," (Comm'n Resp. at 4), but rather simply a natural byproduct of the processes afforded the parties in discovery. MCD asserted meritorious objections in a timely fashion with the expectation they would be discussed among the parties and, if necessary, resolved by this Court. It has not refused to comply with court orders, (Comm'n Resp. at 15), nor exhibited inflexibility, (Comm'n Resp. at 16), with a willingness to "only now" give answers, (Comm'n Resp. at 3)—MCD expressed to the Commission in May that it was willing to consider the Commission's counter arguments to its objections and work towards a compromise. (Milanovich Decl., Doc. 58, ¶ 25.) MCD recognizes that this case may not "business as usual" for the Commission and that it poses constitutional considerations that may be novel, atypical, or unimportant to the Commission and its litigation choices. But that does not render those considerations invalid, frivolous, or dilatory. Indeed, it should be unsurprising that the First Amendment nature of this case raises issues that might not otherwise arise in other contexts.

It is to those issues MCD now turns.

**Reply Supporting Pl.'s
Protective Order Motion**                    -2-

## Argument

## I. The Commission's Discovery Requests Exceed The Agreed Upon Scope of Discovery.

The Commission asserts that MCD has only shown "nodding agreement with MCD's limitation of its own discovery." (Comm'n Resp. at 3.) Nodding may have occurred——but what MCD has factually asserted is that express consent occurred. (Milanovich Decl., Doc. 58, at ¶ 2.) This was not a stipulation, (Comm'n Resp. at 5), but an actual agreement in open court, in response to this Court's question on the matter, to MCD's contention that discovery should be limited to Count XIV. (Milanovich Decl, Doc. 58, at ¶ 2.) Such agreements are enforceable. L.R. 83.4(b).

The Commission further contends that "[i]t was MCD's responsibility to make a record of a modification of the *Joint Discovery Plan*." (Comm'n Resp. at 5.) This is unsupported by both rule and logic. Federal Rule of Civil Procedure 26(f) directs the parties to have a conference and produce as a result of that conference a written discovery plan. F.R.C.P. 26(f)(2). The discovery plan "must state the parties' views and proposals on" a variety of discovery matters, F.R.C.P. 26(f)(3), including "the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in

phases or be limited to or focused on particular issues." F.R.C.P. 26(f)(3)(C).

Local Rule 16.2 contemplates that this discovery plan is submitted no more than

seven days before a preliminary pretrial conference. L.R. 16.2(b)(2). As a result of

discussing the discovery plan as well as pretrial statements filed at the preliminary

pretrial conference, a scheduling order is, and indeed must be, issued. L.R.

16.3(a)(1); Fed. R. Civ. P. 16(b)(1). The parties' written discovery plan, then, has

no force of law. It simply identifies for the Court  areas of agreement and

disagreement to address in a scheduling order to govern discovery. Amending the

written discovery plan post-preliminary pretrial conference would be nonsensical

and of no value.

Moreover, MCD was not aware that a modification of anything was

warranted. MCD was not served any discovery for over three months. It had no

reason to believe that the agreement regarding discovery had not occurred and

indeed, the lapse of three months only reinforced its understanding that discovery

limitations had been agreed to and that the Commission had nothing to inquire of

MCD regarding Count XIV.

The agreed scope of discovery precludes responses to Interrogatories 1-16

and Document Requests 1-14.[1]

---

[1] The Commission repeatedly states that MCD failed to substantively respond to *any* interrogatories and document requests. This is incorrect. MCD responded to

**Reply Supporting Pl.'s**
**Protective Order Motion**                    -4-

## II. The Information the Commission Seeks is Constitutionally Protected.

**A.    The First Amendment Protects Political Association and Expression, Even in the Context of Discovery.**

The Commission's repeated claims of entitlement to investigate "the true nature of [MCD's] proposed speech," (Comm'n Resp. at 11),[2] make the posture of

_____

Interrogatories 17 and 18 and Document Requests 13 (as related to Interrogatory 17) and 15, consistent with its understanding that the scope of discovery was limited to Count XIV.

[2] The Commission states with no legal support that "The State has the right to test MCD's allegations of its status, purpose and intent throughout discovery," (Comm'n Resp. at 3), and that by filing this lawsuit, "MCD opened the door to inquiry about its business operation, accounting methods and records, its projects, strategic plan and its donors, income and expenses." (Comm'n Resp. At 8.) While "MCD's Status, Intent and Purpose Have Been Paramount Since The Complaint Was Filed" *for the Commission*, (Comm'n Resp. at 6), they have never been paramount to Plaintiff's claims nor shown to have any relevance to Defendants' defenses. Rule 26(1)(b) permits the discovery of matters relevant to claims and defenses, and only as to subject matter as authorized by a Court after a showing of good cause. *See* Fed. R. Civ. P. 26, Committee Notes on Rules—2000 Amendment ("The Committee has been informed repeatedly by lawyers that involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery. . . . The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. . . . The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.").

Moreover, the Commission cannot credibly claim a right to test every fact asserted in a complaint. If the Complaint had mentioned that board members were married with children, the Commission could not then demand birth and wedding certificates or DNA samples showing the children are actually those of the board members. Complaints are often filled with facts that give background to provide

this discovery dispute substantially similar to what Wisconsin Right to Life

endured leading up to the *FEC v. Wisconsin Right to Life,* 551 U.S. 449 (2007)

("*WRTL-II*") decision. Before the three-judge district court, the FEC alleged that

*McConnell v. FEC* approved an intent-and-effect test to determine functional

equivalence and so a broad contextual investigation into WRTL's alleged true

purpose for its ads was warranted. *Wisconsin Right to Life v. FEC,* 466 F. Supp. 2d

195, 204-5 (D.D.C. 2006). The district court disagreed, finding that functional

equivalence analysis is limited to "consideration [of] language within the four

corners of the . . . ads." *Id.* at 207. It said that an intent-and-effect test is

"practically unacceptable because as-applied challenges . . . must be conducted

during expedited circumstances of the closing days of a campaign when litigating

contextual framework issues and expert testimony analysis is simply not

workable." *Id.* at 205. "More importantly," the court added, "it is theoretically

unacceptable because it proceeds on the highly questionable assumptions that: (1)

any subjective intent to affect the election, regardless of its degree of importance,

should negate an otherwise genuine issue ad; and (2) . . . experts can *actually*

project the "likely" impact of a given ad on the electoral process." *Id*. at 205-6. It

---

the Court with context. Their inclusion does not, in and of themselves, make them
"testable" or relevant to the parties' claims or defenses.

wrote that the Supreme Court had already recognized that "delving into a speaker's subjective intent is both dangerous and undesirable when First Amendment freedoms are at stake." *Id.* At 206.[3]

The *WRTL-II* court resoundingly agreed with the district court. It found that discovery in free speech cases "must be objective, focusing on the substance of the communication rather than amorphous considerations of intent and effect." *WRTL-II,* 551 U.S. at 469 (*citing Buckley v. Valeo,* 424 U.S. 1, 43-44 (1976)). Otherwise, free speech is chilled by "open[ing] the door to a trial on every ad" and "blanket[ing] with uncertainty whatever may be said." *WRTL-II,* 551 U.S. at 468. Free speech cases must "entail minimal if any discovery, to allow parties to resolve disputes quickly without chilling speech through the threat of burdensome litigation." *Id.* (*citing Virginia v. Hicks*, 539 U.S. 113, 119 (2003)). It is for this reason that the *WRTL-II* adopted the appeal-to-vote test and assessed the content of the ads before it. *WRTL-II,* 551U.S. at 470 ("First, their content is consistent

---

[3] Indeed, the approach treats the actual text of a communication as essentially irrelevant and serves as an empty vessel into which the government can pour discovered intent from an external context that is often beyond the speaker's control or even knowledge. If the application of Montana's campaign finance laws depend on the results of an external intent-and-effect investigation, then those laws are unconstitutionally vague as applied. No one can know when speech is being regulated.

**Reply Supporting Pl.'s**
**Protective Order Motion**            -7-

with that of a genuine issue ad. . . . Second, their content lack indicia of express

advocacy. . . .”).

The same analysis applies here. The Commission has asserted, and this

Court has accepted, that the three definitions at issue here—“political committee,”

“contribution,” and “expenditure”—have a narrowing gloss of express advocacy

and its functional equivalent that saves them from unconstitutional vagueness.

*Montanans for Community Development v. Motl*, 54 F. Supp. 3d 1153, 1161 (D.

Mont. 2014) (“[*WRTL-II*’s] functional equivalent of express advocacy is the test

COPP has applied to the content of challenged communications in determining

whether they are express advocacy.”). If such an assertion is not true, if these

definitions reach beyond the communication itself warranting discovery into

MCD’s purposes, this Court should reexamine the credibility of the narrowing

gloss it has accepted. If the assertion is true, discovery into MCD’s purposes and

the “true nature” of its speech should be proscribed.

**B.   Compelled Disclosures Like the Commission’s Discovery Requests Fail
Exacting Scrutiny.**

**1.   MCD Can Make A Prima Facie Showing Of Harm.**

The Commission challenges MCD’s claim of harm. First, it asserts that the

declarations are “conclusory and speculative,” (Comm’n Resp. at 9), copy

verbatim from *Perry*, and mirroring each other. (Comm'n Resp. at 10.) Yet it offers no reason why their veracity should be called into question, or how they are inadequate. The harm alleged in *Perry* is the same harm Mssrs. Coate and Walker allege: they will change how they associate and communicate, and will lose donors as a result of compelled disclosure during discovery. (*See* Coate Decl., Doc. 59, ¶¶ 5, 6, 8; Walker Decl., Doc. 60, at ¶¶ 5, 6, 8.) Since the evidence offered in *Perry* was sufficient as stated, there is no reason for Mssrs. Coate and Walker to creatively restate the same harm in some other fashion (and incur additional attorneys' fees) simply to avoid saying literally the same thing.

Second, the Commission claims that MCD must show actual or past harassment, harm, or damage. (Comm'n Resp. at 11, 12.) MCD has shown the same threatened harm asserted in *Perry*: the chill of both board member and donor association as well as expression as a result of the prospect of public disclosure. (Coate Decl., Doc. 59, ¶¶ 5, 6, 8; Walker Decl., Doc. 60, at ¶¶ 5, 6, 8.) This was adequate proof of harm in *Perry*. It is here, as well.

Third, the Commission attempts to distinguish the type of protected speech at issue in *Perry* and the procedural posture of *NAACP* to justify disclosure here. (Comm'n Resp. at 12, 13.) *Perry*, it asserts, was about campaign strategies. (Comm'n Resp. at 11.) MCD's speech, in contrast, is purportedly not political

**Reply Supporting Pl.'s**
**Protective Order Motion**          -9-

according to Defendants. (*Id.*) But issue advocacy *is* political. *See Buckley,* 424 U.S. at 48 ("Advocacy of the election or defeat of candidates for federal office is no less entitled to protection under the First Amendment than the discussion of political policy generally"). And what the Commission asks for—explanations and documentation of processes used to develop their ads, copies of minutes, for example—all relate to internal, confidential strategies and the "formulation of . . . messages." *Perry v. Schwarnegger,* 591 F.3d 1147, 1165 n.12. *Perry* applies.

Nor is *NAACP* distinguishable because this is not an enforcement action. MCD's constitutional rights do not turn on whether its efforts to vindicate its rights are anticipatory rather than defensive. It is not running "for First Amendment cover when its allegations [are] challenged," (Comm'n Resp. at 12); it has always had First Amendment protection that it now asserts because the Commission will not recognize it.

Fourth, the Commission suggests that harm cannot be assumed because it has "never been suggested that any disclosure made in this case would become public." (Comm'n Resp. at 13.) As a preliminary matter, discovery is inherently public. There is nothing that prevents parties from sharing or using discovery materials in other contexts. It is for this reason that the Federal Rules contemplate protective orders. *See* Fed. R. Civ. P. 26(c).

**Reply Supporting Pl.'s**
**Protective Order Motion**                -10-

But more crucially, MCD's objection is not limited to public disclosure. The disclosure of its internal strategies and associations to only the Commissioner is enough to affect how its board members communicate and associate. (Coate Decl., Doc. 59, ¶ 7; Walker Decl., Doc. 60, ¶ 7.) "A protective order limiting dissemination of this information will ameliorate but cannot eliminate these threatened harms." *Perry,* 591 F.3d at 1164.

Last, the Commission asserts that MCD's provision of its Articles of Incorporation waived any privilege it might assert. (Comm'n Resp. at 11.) MCD made a strategic decision while seeking expedited preliminary injunction review to provide its Articles of Incorporation in an effort to foreclose the Commission's inexplicable preoccupation with MCD's corporate nature and focus the Court on the actual criteria involved for political committee status and the constitutional problems such criteria (or lack thereof) pose. In doing so, it in no way makes the issue of its incorporation relevant to the laws challenged, nor does it entitle the Commission to further disclosures.[4]

---

[4] Indeed, MCD thought that between this Court's preliminary injunction order finding that MCD had standing irrespective of its corporate stature and the December 18 conference limited the scope of discovery—along with three months of silence on the matter during discovery—that the issue had been put to rest.

**Reply Supporting Pl.'s**
**Protective Order Motion**          -11-

**2.      The Commission Cannot Demonstrate A Sufficient Need For the Information Sought To Justify the Deterrent Effect of Disclosure.**

The only two areas of disclosure that the Commission asserts a need—and indeed relevance—for are its requests relating to MCD's 501(c)(4) status and to MCD's relationship with Energy 21 and the U.S. Chamber. (Comm'n Resp. at 3, 6.)

The Commission asserts that "[t]he source of the speech might demonstrate that the speech is not 'educational' or purely 'for the social welfare'" as required by the IRS. (Comm'n Resp. at 3.) The Commission's concern for MCD's IRS tax status compliance is misplaced. Flyers that "may violate [C.F.R.] regulation" are not in any of Defendants' provence to enforce. *See, e.g.,* MCA § 13-37-111 ("the commissioner is responsible for investigating all of the alleged violations of the election laws contained in chapter 35 of this title or this chapter and in conjunction with the county attorneys is responsible for enforcing these election laws."); MCA § 2-15-501 (describing the duties of the Montana Attorney General). Even if Montana law granted such enforcement, the IRS has not delegated that power to the state, and it preempts any such power. *Cf. Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 635-37(1952).[5]

---

[5]The Commission's understanding of permissible campaign activities for tax-exempt organizations is also incomplete. An exempt social welfare

**Reply Supporting Pl.'s**
**Protective Order Motion**          -12-

Nor is information about MCD's relationship with 21ˢᵗ Century Energy and, by extension, the U.S. Chamber of Commerce relevant. The Commission states that "MCD refuses to acknowledge that it trotted out its affiliation with 21ˢᵗ Century Energy and "energyxxi.com"." (Comm'n Resp. 6.) However, neither MCD's ad nor its Complaint profess nor allege affiliation of any kind, and indeed, MCD's Complaint expressly disavowed any coordination with other political committees. (Verified Compl., Doc. 1, ¶ 24; Am. Verified Compl., Doc. 64, ¶ 27.) Moreover, if MCD were "affiliated" with either entity, what would it prove? Montana's political committee, expenditure, and contribution definitions do not turn on affiliation. It could not bolster or defeat any claims or defenses. The Commission has no need to ascertain MCD's affiliation with 21ˢᵗ Energy or the U.S. Chamber of Commerce.

The Commission argues that its discovery requests are tailored to the

---

organization can engage in political campaign activity without jeopardizing its exemption—there is no "complete ban" on political campaign activities by tax-exempt social welfare organizations. Rev. Rul. 81-95, 1981-1 C.B. 332. However, this type of activity cannot be primary. *Id.*; *see, e.g.,* Rev. Rul. 60-193, 1960-1, C.B. 145 (finding a non-profit, non-partisan organization the activities of which were primarily directed toward encouraging individuals in business to become more active in politics and government and toward promoting business, social and civic action to qualify for tax exemption as a social welfare organization). Notably, Montana's political committee status does not turn on the primary purpose of the individuals or group in question. So the Commission simply has no need to explore the validity of MCD's tax status.

*Complaint* and MCD public documents. (Comm'n Resp. at 14.) However, Federal Rule of Civil Procedure 26(b)(1) requires that the Commission's discovery requests, at minimum, be tailored to MCD's claims or the Commission's defenses. Only this Court can expand discovery to any matter relevant to the subject matter involved in an action, and only for good cause. *Id.* The Commission has neither asked this Court to expand the scope of discovery to matters relevant to the subject matter of this case (which would still preclude the Commission's requests), nor has it offered reasonable cause for doing so. Nor has it even explained how its discovery requests relate to MCD's claims or its own defenses. It has not tailored its requests to a sufficient need.

Indeed, the Commission cites numerous cases applying a balancing test to determine whether to anonymous defendants' identities must be disclosed but would not satisfy the test assuming such tests applied in this context. The test requires, for example, the disclosure-seeking plaintiff to establish a prima facie claim against the anonymous defendant, to be specific in its discovery request, and to demonstrate a central need for the discovery to advance the plaintiff's claim—in short, it places the onus on the disclosure-seeking party. *Sony Music Entertainment v. Does 1-40,* 326 F. Supp.2d 556, 564-65 (S.D.N.Y. 2004). Assuming this test even applies here, the Commission cannot meet this burden. It

**Reply Supporting Pl.'s**
**Protective Order Motion**                    -14-

has not established a prima facie defense for which the protected speech would

aid. It has not made its discovery requests specific to that need. And it has not

demonstrated the central need for the discovery to advance the Commission's

defense. Its discovery requests should be prohibited under the First Amendment.

### Conclusion

For the reasons above, Plaintiff MCD respectfully requests that this Court

grant *Plaintiff's Motion for Protective Order* and limit all discovery in this matter

to inquiries relating to Count XIV and that are tailored to a compelling

governmental need.

Dated: July 2, 2015

Respectfully Submitted,

/s/Anita Y. Milanovich

James Bopp, Jr. (Ind. No. 2838-84)*
Justin McAdam (Ind. No. 30016-49)*
THE JAMES MADISON CENTER FOR
FREE SPEECH
The National Building
1 South Sixth Street
Terre Haute, IN 47807
Phone: (812) 232-2434
Fax: (812) 235-3685
Email: jboppjr@aol.com
          jmcadam@bopplaw.com
*Attorneys for Plaintiff*

Anita Y. Milanovich (Mt. No. 12176)
THE BOPP LAW FIRM, PC
1627 West Main Street, Suite 294
Bozeman, MT 59715
Phone: (406) 589-6856
Email: aymilanovich@bopplaw.com
*Attorney for Plaintiff*

*Pro hac vice application granted
September 4, 2014.

**Reply Supporting Pl.'s
Protective Order Motion**                    -15-

**Local Rule 7.1(d)(2)(E) Word Verification Certification**

I certify that this reply brief complies with Local Rule 7.1(d)(2)(A). It

contains 3202 words, as verified by the word count feature of WordPerfect X5, the

word processor that created it.


/s/ Anita Y. Milanovich
Anita Y. Milanovich

**Certificate of Service**

I hereby certify that on July 2, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Montana by using the Court's CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Anita Y. Milanovich