TIMOTHY C. FOX
Montana Attorney General
DALE SCHOWENGERDT
Solicitor General
MATTHEW T. COCHENOUR
PATRICK M. RISKEN
Assistant Attorneys General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone:  406-444-2026
Fax:  406-444-3549
dales@mt.gov
mcochenour2@mt.gov
prisken@mt.gov

COUNSEL FOR DEFENDANTS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MONTANANS FOR COMMUNITY DEVELOPMENT,<br><br>     Plaintiff,<br> v.<br><br>JONATHAN MOTL, in his official capacity as Commissioner of Political Practices, TIMOTHY FOX, in his official capacity as Attorney General for the State of Montana, and LEO GALLAGHER, in his official capacity as Lewis and Clark County Attorney,<br><br>     Defendants. | Cause No. 6:14-cv-00055-DLC-JCL<br><br>**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION .................................................................................. 1

UNDISPUTED MATERIAL FACTS ...................................................... 2

SUMMARY JUDGMENT STANDARDS ............................................... 4

ARGUMENT ......................................................................................... 5

I.   MCD LACKS STANDING FOR MANY OF ITS CHALLENGES
     BECAUSE IT HAS SUFFERED NO INJURY AND BECAUSE
     THE CHALLENGED REGULATIONS WERE NOT EFFECTIVE
     WHEN MCD FILED ITS COMPLAINT ........................................ 5

II.  MONTANA'S "POLITICAL COMMITTEE" DEFINITION AND
     DISCLOSURE REQUIREMENTS FOR INCIDENTAL
     COMMITTEES SATISFY EXACTING SCRUTINY ................................ 8

     A.   Montana Has Sufficiently Important Governmental Interests ............. 9

     B.   Montana's Laws Are Substantially Related to the Important
          Governmental Interests ...................................................... 10

III. MONTANA'S STATUTES AND REGULATIONS ARE NOT
     UNCONSTITUTIONALLY VAGUE ......................................... 15

     A.   The Phrase "Support or Oppose" Does Not Render
          Montana's Statutes and Regulations Unconstitutionally
          Vague ................................................................................ 16

     B.   Referring to Defined Terms Within a Statutory Definition
          Does Not Render the Definitions Unconstitutionally Vague .............. 18

     C.   Montana's Administrative Rules Do Not Permit
          Arbitrary and Discriminatory Enforcement, and
          Are Not Unconstitutionally Vague .................................... 20

**TABLE OF AUTHORITIES**
   **(Cont.)**

      1.    "Expenditure," "Contribution," "Political Committee" Definitions ................................................................20

      2.    Political-Committee Reporting Requirements .........................21

    D.    As Montana's Statutes Are Not Unconstitutionally Vague, MCD's Derivative Challenge to Montana's Regulations Must Fail ......................................................................23

    E.    MCD's Facial Challenge to Montana's Electioneering Communication Statute Fails Because There Are No Vagueness Concerns in Most Circumstances ....................................24

IV.    THE STATE IS ENTITLED TO SUMMARY JUDGMENT ON MCD'S VIEWPOINT DISCRIMINATION AND EQUAL PROTECTION CLAIMS BECAUSE MCD HAS PRESENTED NO EVIDENCE OF IMPROPER MOTIVE ................................................26

CONCLUSION ........................................................................30

CERTIFICATE OF SERVICE .............................................................31

CERTIFICATE OF COMPLIANCE .......................................................32

# TABLE OF AUTHORITIES

## Cases

*Alaska Right to Life Comm'n v. Miles* (*ARTLC*),
    441 F.3d 773 (9th Cir. 2006) ........................................................................9, 12

*Alpha Delta Chi-Delta Chapter v. Reed*,
    648 F.3d 790 (9th Cir. 2011) ..................................................................... 27, 28

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986)................................................................................................4

*Assn. des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
    729 F.3d 937 (9th Cir. 2013) ...............................................................................15

*Barren v. Harrington*,
    152 F.3d 1193 (9th Cir. 1998) ...........................................................................28

*Buckley v. Valeo*,
    424 U.S. 1 (1976)................................................................................................17

*Canyon Ferry Road Baptist Church v. Unsworth*,
    556 F.3d 10211 (9th Cir. 2009) .........................................................................10

*Carmen v. San Francisco Unified School District*,
    237 F.3d 1026 (9th Cir. 2001) ...........................................................................28

*Celotex v. Catrett*,
    477 U.S. 317 (1986)................................................................................ 4, 27, 30

*Center for Individual Freedom v. Madigan*,
    697 F.3d 4644 (7th Cir. 2012) ...........................................................................26

*Citizens United v. FEC*,
    558 U.S. 310 (2010)................................................................................ passim

*Federal Election Commn. v. Wisconsin Right to Life* (*WRTL*),
    551 U.S. 449 (2007)................................................................................17

*Hardenburgh v. Hardenburgh*,
    114 Mont. 469, 146 P.2d 151 (Mont. 1944) ....................................................21

**<u>TABLE OF AUTHORITIES</u>**
    **(Cont.)**

*Human Life of Washington v. Brumsickle*,
    624 F.3d 990 (9th Cir. 2010) ..................................................................... passim

*Jeffers v. Gomez*,
    267 F.3d 895 (9th Cir. 2001) ............................................................................29

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)............................................................................................5

*McConnell v. Federal Election Commn.*,
    540 U.S. 93 (2003), *overruled in part*,
    *Citizens United*, 558 U.S. at 365...................................................................9, 13

*Montanans for Community Development v. Motl*,
    2014 U.S. Dist. LEXIS 32896, *2 (D. Mont. Mar. 12, 2014) ..............................3

*Moss v. United States Secret Service*,
    572 F.3d 962 (9th Cir. 2009) ............................................................................27

*National Assn. for Gun Rights v. Murry* (*NAGR*),
    969 F. Supp. 2d 1262 (D. Mont. 2013)......................................................10, 11

*State v. Johnson*,
    277 P.3d 1232 (Mont. 2012) .......................................................................16, 23

*State v. Watters*,
    208 P.3d 408 (Mont. 2009) ..............................................................................18

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2334 (2014)....................................................................................5, 6

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008).............................................................................15, 24, 26

*Yamada v. Snipes*,
    786 F.3d 1182 (9th Cir. 2015) ................................................................. passim

**TABLE OF AUTHORITIES**
     **(Cont.)**

## OTHER AUTHORITIES

United States Code
     42 U.S.C. § 1983 ....................................................................................27


Federal Rules of Civil Procedure
     Rule 56(a).............................................................................................4

Administrative Rules of Montana
     Rule 44.11.201 ...............................................................................2, 11
     Rule 44.11.202 ....................................................................................2
     Rule 44.11.202(6)...............................................................................22
     Rule 44.11.202(6)(c)...........................................................................22
     Rule 44.11.202(7)...............................................................................22
     Rule 44.11.401(1)...............................................................................20
     Rule 44.11.501(1) (2016).....................................................................20
     Rule 44.11.603 ..................................................................................21

Montana Code Annotated
     Title 13 ............................................................................................22
     § 13-1-101(3) ....................................................................................19
     § 13-1-101(9) ...............................................................................10, 19
     § 13-1-101(15) ..................................................................................13
     § 13-1-101(15)(a)...............................................................................24
     § 13-1-101(17) ............................................................................10, 19
     § 13-1-101(22) ..................................................................................10
     § 13-1-101(28) ..................................................................................10
     § 13-1-101(30) ..................................................................................10
     § 13-1-101(49) ..................................................................................18
     § 13-37-232(1) ..................................................................................23

**<u>TABLE OF AUTHORITIES</u>**
    **(Cont.)**

<u>Montana Administrative Register</u>
    1 Mont. Admin. Register 28 (Jan. 8, 2016) ......................................................3, 7
    1 Mont. Admin. Register 36 (Jan. 8, 2016) ......................................................21

<u>Montana Constitution</u>
    Art. II, § 9..........................................................................................................14

Houghton Mifflin Harcourt
    *The American Heritage Dictionary* 85 (5th ed.,  2011).......................................22

The official capacity defendants Jonathan Motl, Timothy Fox, and Leo Gallagher (Montana) file this brief supporting their motion for summary judgment on all counts.  This Court should grant the motion for the reasons set forth below.

## INTRODUCTION

This case is about a group that wants to send out political mailers to "educate" Montana voters during an election cycle but that doesn't think it should have to educate those voters about who's behind the message or who paid for the mailer.  Rather than comply with campaign finance laws, Montanans for Community Development (MCD) has launched a scattergun attack on Montana's disclosure regulations.

Disclosure laws foster transparency and help inform voters about the entities that are vying for their attention and trying to persuade them to vote a particular way.  Both the Supreme Court and the Ninth Circuit have unequivocally affirmed disclosure laws.  The laws that MCD challenges are vital to providing voters with information about the groups engaged in election-related spending.  No genuine issues of material fact exist, the laws are constitutional, and this Court should grant summary judgment for Montana.

## UNDISPUTED MATERIAL FACTS

Montanans for Community Development (MCD) is a group with no members, no website, no email, and no phone number.  Risken Decl., Ex. A (Coate Dep.) at 34, 47.  MCD's president and 30(b)(6) witness doesn't know if MCD has a bank account and doesn't recall its address.  *Id*. at 34, 36.  MCD considers itself a "self-declared" tax exempt entity, but it has never received tax exempt recognition from the IRS.  *Id*. at 16-20.  MCD considers itself a corporation, but it was dissolved by the Montana Secretary of State on December 1, 2015.  Risken Decl., Exs. J, K.

Incidental political committees that receive or spend money to support or oppose a candidate or that make electioneering communications must register with the Commissioner of Political Practices (Commissioner) and comply with minimal disclosure requirements.  Mont. Admin. R. 44.11.201-202.  The registration and disclosure forms are available online.  They are not complicated.  It would take MCD about 10 minutes to fill out the registration form.  Motl Decl. at 4, 7.

During the 2014 election cycle, MCD wanted to circulate political ads mentioning candidates and supporting job growth.  Doc. 100, ¶ 39.  MCD asserts that in the future it intends to spend more than $250 on circulating similar ads within 60 days of the initiation of voting and that the ads will likely reach more than 100 recipients in the candidate's district.  *Id*., ¶ 40.  MCD's ads are "geared

toward letting people know who supports pro-growth and who doesn't support pro-growth." Coate Dep. at 46.  MCD lists the names of candidates in its mailers because "it's irrelevant unless people are educated on how they go to the voting booth." *Id*.

James Pennington, MCD's Secretary, "abhor[s] secretive, last minute, calculated and contrived campaigning by anyone seeking to influence my vote without saying who they really are."  Doc. 100-25 at 5.  Nonetheless, MCD refuses to comply with disclosure requirements and report its political spending.  Doc. 100, ¶ 43.  And MCD has twice waited until the eve of an election to file lawsuits challenging Montana's election laws.  *See* Doc. 28, at 3 n.1; *Montanans for Community Development v. Motl*, 2014 U.S. Dist. LEXIS 32896, *2 (D. Mont. Mar. 12, 2014).

In 2015, Montana enacted new campaign finance statutes.  On December 31, 2015, MCD filed a second amended complaint (Complaint), challenging many of these laws as well as administrative rules that the Commissioner was in the process of drafting.  Doc. 100.  The administrative rules were adopted and became effective on January 9, 2016.  1 Mont. Admin. Register 28 (Jan. 8, 2016).[1]

---

[1] The Montana Administrative Register is available online at:  www.mtrules.org. The new administrative rules are effective but have not yet been published.  For the Court's convenience, the statutes and rules cited in MCD's Complaint are attached as Risken Decl., Ex. 2.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is proper if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). A fact is material if it could "affect the outcome" of a lawsuit, and an issue is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).  The moving party need not disprove its opponent's claims, but must only show or "point[] out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).

A court must grant summary judgment if the nonmoving party fails to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  A party's failure "renders all other facts immaterial." *Id*. at 323.  Moreover, a "scintilla of evidence" is insufficient; the question is whether a jury could find for the nonmoving party on the evidence presented. *Anderson*, 477 U.S. at 252.

# **ARGUMENT**

I. **MCD LACKS STANDING FOR MANY OF ITS CHALLENGES BECAUSE IT HAS SUFFERED NO INJURY AND BECAUSE THE CHALLENGED REGULATIONS WERE NOT EFFECTIVE WHEN MCD FILED ITS COMPLAINT.**

To establish standing, MCD must show:  (1) that it suffered an injury in fact; (2) that Montana caused the injury; and (3) that a favorable court decision could redress its injury.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  In preenforcement challenges, a plaintiff can show injury by alleging an intent to "engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and that a credible threat of prosecution exists.  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014) (citation omitted).  When there is "threatened action by *government*," a plaintiff can sue without waiting to be exposed to liability.  *Id*. (emphasis in original) (citation omitted).

In Count 21 (mis-numbered XX), MCD challenges the Commissioner's investigative and publication procedures.  MCD alleges that it will refrain from running ads because, if someone files a political practices complaint against MCD, then the complaint will be posted on the Commissioner's website.  *See* Doc. 100, ¶ 213.  If this could even be considered an injury, it is too tenuous to establish standing for MCD.  First, no statute prohibits the action that MCD wants to take: sending out advertisements.  Second, MCD's action would not trigger a "threatened action by *government*"; political advocacy does not trigger

investigation.  For there to be any governmental action, MCD would first have to send out a flyer, and then, second, someone would have to file a sworn complaint against MCD with the Commissioner.  Only then would investigative provisions come into play, but that is two steps removed.  Significantly, the vast majority of political committees engage in advocacy without ever having a complaint filed against them.  Motl. Decl. at 8.  In short, MCD has suffered no injury in fact, and certainly not one caused by Montana.  There is no standing.

MCD also lacks standing to challenge Count XVII (the contribution conversion provision).  MCD has not alleged that it intends to "advise[], counsel[], or otherwise knowingly encourage[] any person to make an expenditure for the purposes of avoiding direct contributions, or for any other reason . . . ."  Mont. Admin. R. 44.11.504.  Thus, MCD lacks standing even for a preenforcement case. *Driehaus*, 134 S. Ct. at 2342.

MCD also lacks standing to challenge the administrative rules that were not effective when MCD filed its Complaint.  It is well settled that a party's standing is determined by the date it files its complaint.  *Yamada v. Snipes*, 786 F.3d 1182, 1203-04 (9th Cir. 2015).  "The party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing."  *Id*. (citation omitted).  In *Yamada*, for example, the plaintiff challenged Hawaii's electioneering communication's reporting requirements.  When plaintiff

filed its lawsuit, it did not have to follow the requirements and thus lacked standing; however, Hawaii later amended its law to require committees like plaintiff to follow the reporting requirements. *Id*. at 1203. Because of the amendment, plaintiff argued that it now had standing. *Id*. The Ninth Circuit disagreed, holding that because plaintiff "was not subject to the 'electioneering communication' reporting requirements as of the date the complaint was filed, we do not consider [its] constitutional challenge to those requirements." *Id*. at 1204.

Here, MCD filed its current Complaint on December 31, 2015. Doc. 100. The Commissioner adopted new administrative rules that became effective on January 9, 2016. *See* 1 Mont. Admin. Reg. 28. More than half of MCD's constitutional challenges are aimed at or rest on rules that had not been adopted and were not effective when MCD filed its Complaint, specifically Counts IV (political committee regulatory definition); VI, VII, and VIII (political committee type definition); IX (political committee reporting requirements); X (political committee filing requirements); XII (expenditure definition); XV and XVI (contribution definition), 18 and 19 (mis-numbered as XVII and XVIII) (electioneering communication); 20 (mis-numbered as XIX) (attribution provision); 21 (mis-numbered as XX) (investigatory provisions).

But these challenged rules were either new rules or amendments to existing rules that had not yet been adopted and were not effective when MCD filed its

Complaint.  Thus, this Court should refuse to consider MCD's constitutional

challenges to them.  *Yamada*, 786 F.3d at 1204.

II.     **MONTANA'S "POLITICAL COMMITTEE" DEFINITION
        AND DISCLOSURE REQUIREMENTS FOR INCIDENTAL
        COMMITTEES SATISFY EXACTING SCRUTINY.**

MCD raises overbreadth challenges to Montana's statutory and regulatory

definition of "political committee" based on the disclosure requirements.  *See*

Doc. 100, Counts I, II, VI, VII.  MCD has not been classified as a political

committee.  Based on MCD's allegations and proposed mailers, as well as

statements from MCD's counsel at the preliminary injunction hearing, it appears

that if MCD were a political committee, it would be an incidental committee.  *See*

*e.g.*, Doc. 100, ¶¶ 36-37, 41-42; Prelim. Inj. Hrg. at 7 (Oct. 1, 2014).  MCD also

challenges that committees must file disclosure reports electronically and that

corporate electioneering communications must include an attribution listing the

corporation's name and CEO (MCD's so-called "anonymous speech ban").

Doc. 100, Counts X, 19 (mis-numbered as XVIII).  These disclosure provisions

satisfy exacting scrutiny and thus are constitutional.

"Disclaimer and disclosure requirements may burden the ability to speak,

but they impose no ceiling on campaign-related activities, and do not prevent

anyone from speaking."  *Citizens United v. FEC,* 558 U.S. 310, 366 (2010)

(internal quotation marks and citations omitted).  Disclaimer and disclosure

requirements are constitutional if they meet "exacting scrutiny," meaning they must be "substantially related to a sufficiently important governmental interest." *Human Life of Washington v. Brumsickle*, 624 F.3d 990, 1005 (9th Cir. 2010). Montana's disclosure provisions are substantially related to the State's interests of providing Montanans with information about election-related spending.

## A.   Montana Has Sufficiently Important Governmental Interests.

Providing the public with information about groups that spend in elections constitutes a sufficiently important governmental interest justifying disclosure requirements.  *Citizens United*, 558 U.S. at 369 ("informational interest alone is sufficient to justify" disclosure); *McConnell v. Federal Election Commn.*, 540 U.S. 93, 196-97 (2003), *overruled in part*, *Citizens United*, 558 U.S. at 365 (disclosure provides the electorate information, deters corruption, allows enforcement of electioneering restrictions, and helps citizens "make informed choices in the political marketplace." (citation omitted)); *Brumsickle*, 624 F.3d at 1008 (disclosure advances the "important and well-recognized governmental interest of providing" voters with information "to assess the various messages vying for their attention in the marketplace of ideas."); *Alaska Right to Life Comm'n v. Miles* (*ARTLC*), 441 F.3d 773, 793 (9th Cir. 2006) (recognizing "compelling state interest in informing voters who or what entity is trying to persuade them to vote in a certain way.")

Notably, this Court and the Ninth Circuit have already considered Montana's disclosure provisions and determined that Montana's interests are sufficiently important. *Canyon Ferry Road Baptist Church v. Unsworth*, 556 F.3d 1021, 1031 (9th Cir. 2009); *National Assn. for Gun Rights v. Murry* (*NAGR*), 969 F. Supp. 2d 1262, 1267 (D. Mont. 2013).

### B.   Montana's Laws Are Substantially Related to the Important Governmental Interests.

Montana's political committee definition and disclosure requirements are substantially related to these important state interests because they ensure that Montanans have information about groups that spend or receive money to support or oppose candidates in elections. "Political committees" are groups such as corporations, partnerships, and associations that receive contributions or make expenditures "to support or oppose" a candidate. Mont. Code Ann. § 13-1-101(28), (30). "Incidental committees" are "not specifically organized or operating for the primary purpose of supporting or opposing candidates" but become political committees incidentally by receiving a contribution or making an expenditure to support or oppose a candidate. Mont. Code Ann. §§ 13-1-101(9), (17), (22).

In *NAGR*, this Court rejected constitutional challenges like MCD's. This Court recognized that the Montana public uses the information provided through disclosure: "The Commissioner's office regularly receives inquiries from voters

and interested citizens, candidates, reporters, and academics during election season regarding who is spending in Montana elections.  It goes without saying that Montana voters are interested in who is financing political campaigns." *NAGR*, 969 F. Supp. 2d at 1267.  This has not changed.  *See* Motl. Decl. at 2, 9.

This Court also determined that incidental committees have minimal disclosure obligations and that the "public's interest in transparent political funding outweighs the minimal burden the incidental disclosure requirements impose . . . ." *NAGR*, 969 F. Supp. 2d at 1270.  These requirements also have not substantively changed.  An incidental committee engaged in political advocacy to support or oppose candidates must provide basic information, such as the names and addresses of the committee, its officers, and its treasurer, and whether the committee is incorporated.  *See* Mont. Admin. R. 44.11.201.  They must fill out a C-2 form, which takes about 10 minutes, and they must fill out a C-4 form, which is not complicated.  Motl. Decl. at 4-5, 7.  The disclosure requirements are minimally burdensome.

The undisputed record establishes that the public uses information disclosed by incidental committees to learn about who is spending money in Montana's elections.  Motl. Decl. at 2, 9.  And the public can easily access this information on the Commissioner's website.  *Id*. at 3.  This clearly benefits the public and substantially serves the important informational interest.  As the Ninth Circuit

recognizes, "there is a compelling state interest in informing voters who or what entity is trying to persuade them to vote in a certain way. *ARTLC*, 441 F.3d at 793.

The requirement that committees report electronically is also substantially related to the informational interest. Electronic filing allows the public quick access to information about political committees that are vying for the public's attention. Motl Decl. at 3. The Supreme Court has recognized the value of electronic information: "With the advent of the Internet, prompt disclosure of expenditures can provide shareholders and citizens with the information needed to hold corporations and elected officials accountable for their positions and supporters." *Citizens United*, 558 U.S. at 370. Electronic reporting furthers the interest of transparency and prompt disclosure.

Requiring election communications, electioneering communications, and independent expenditures to include a "paid for by" attribution also substantially relates to the informational interest. Allowing groups engaged in political advocacy to hide their identities from Montanans would defeat the public's interest in knowing who or what is trying to persuade them. Both the Supreme Court and the Ninth Circuit have rejected challenges like MCD's. *See Citizens United*, 558 U.S. at 366-67 (upholding disclaimer provision that required an advertisement to identify who was responsible for the content and to also identify the name and address of the person or group funding the advertisement); *Yamada*, 786 F.3d at

1202-03 n.14. ("the disclaimer serves an important governmental interest by informing the public about who is speaking in favor or against a candidate before the election" and observing that *Citizens United* "all but foreclosed" arguments like MCD's.)

The electioneering communication statute also serves the informational interest.  This is a new disclosure law that applies to "paid communication[s]" made within 60 days of the initiation of voting that can be received by more than 100 recipients in the district.  Mont. Code Ann. § 13-1-101(15).  As with the other provisions, this helps Montanans obtain necessary information "to evaluate the various messages competing for their attention."  *Brumsickle*, 624 F.3d at 1005.  While MCD asserts that the definition cannot be constitutional, the Ninth Circuit has recognized that, after *Citizens United*, "the position that disclosure requirements cannot constitutionally reach issue advocacy is unsupportable."  *Id*. at 1016.

The investigative procedures and publication provisions that MCD has challenged also serve the informational interest as well as the interest of enforcing Montana's election laws.  *See McConnell*, 540 U.S. at 196-97.  Without the ability to investigate alleged violations of campaign finance law, the disclosure provisions would be nothing more than an honor system that groups could ignore without consequence.  Further, Montana's constitutional "right to know" affords broad

access to observe the documents and deliberations of state agencies.  Mont. Const. art. II, § 9.  To balance the constitutional right to know and privacy interests, the Commissioner has adopted a confidentiality policy that has been in effect for years and which provides that investigative files and documents are not generally provided to the public.  Motl Decl. at 9.

MCD's overbreadth challenge rests on the fact that disclosure requirements are not limited to groups with the "major purpose" of nominating or electing candidates.  The Ninth Circuit has repeatedly rejected this "major" or "primary" purpose argument and repeatedly reaffirmed the exacting scrutiny standard.  *See Yamada*, 786 F.3d at 1200-01; *Brumsickle*, 624 F.3d at 1011.  This Court must reject MCD's overbreadth argument.

In sum, Montana voters actively endeavor to "make informed choices in the political marketplace" and "to evaluate the arguments to which they are being subjected."  *Citizens United*, 558 U.S. at 367-68 (citations omitted).  The political committee definition and disclosure requirements address MCD Secretary Pennington's concerns of "secretive, last minute, calculated and contrived campaigning by anyone seeking to influence my vote without saying who they really are."  Doc. 100-25 at 5.  They help the voters and provides the transparency necessary to enable "the electorate to make informed decisions and give proper

weight to different speakers and messages." *Citizens United*, 558 U.S. at 371.

This Court should uphold Montana's disclosure and reporting provisions.

## III. MONTANA'S STATUTES AND REGULATIONS ARE NOT UNCONSTITUTIONALLY VAGUE.

A law is unconstitutionally vague if it "fails to provide a reasonable

opportunity to know what conduct is prohibited, or is so indefinite as to allow

arbitrary and discriminatory enforcement." *Brumsickle*, 624 F.3d at 1019 (citation

omitted). Even when evaluating laws that implicate the First Amendment,

however, courts do not require "perfect clarity and precise guidance" because "we

can never expect mathematical certainty from our language." *Yamada*, 786 F.3d

at 1187-88 (citations omitted). Additionally, to prevail on its facial challenges,

MCD must establish "that 'no set of circumstances exists under which the Act

would be valid,' i.e., that the law is unconstitutional in all of its applications."

*Washington State Grange v. Washington State Republican Party*, 552 U.S. 442,

449 (2008) (citation omitted).

When interpreting state statutes and regulations, this Court is guided by

Montana's statutory interpretation rules. *See Assn. des Eleveurs de Canards et*

*d'Oies du Quebec v. Harris*, 729 F.3d 937, 945 (9th Cir. 2013) ("In interpreting a

state statute, we apply the state's rules of statutory construction.") Under Montana

law, courts are bound by the statutes' plain language if legislative intent can be

gleaned from the statute.  *State v. Johnson*, 277 P.3d 1232, ¶ 19 (Mont. 2012).

Courts must ensure that individual statutes coordinate with one another and

harmonize statutes on the same subject to give effect to each.  *Johnson*, ¶ 20.  As

demonstrated above, MCD lacks standing to challenge many regulations addressed

below, but even without justiciability problems, MCD's challenges must still fail.

A.    **The Phrase "Support or Oppose" Does Not Render
Montana's Statutes and Regulations Unconstitutionally
Vague.**

MCD contends that the statutory and regulatory definitions of "political

committee," "expenditure," "contribution," and "electioneering communication"

are unconstitutionally vague because they contain the phrase "support or oppose."

*See* Doc. 100, Counts III; VIII; XI; XIV; 18 (mis-numbered as XVII).  This Court

must reject MCD's challenge because Montana's definition of "support or oppose"

is statutorily limited to express advocacy and the functional equivalent of express

advocacy, which the Ninth Circuit has expressly held are not vague.  *Yamada*, 786

F.3d at 1190.

*Yamada* forecloses MCD's vagueness challenges.  There, the Court rejected

a vagueness challenge to campaign finance definitions because the challenged

term--"influencing"--could be limited to express advocacy and the functional

equivalent of express advocacy.  *Yamada*, 786 F.3d at 1189-90. [2]  Limiting the definitions' reach to express advocacy and the functional equivalent of express advocacy saved the statutes.  *Id*. at 1192.

*Yamada* soundly rejected that the definitions could be vague even with the limiting construction.  The Court stated:  "There is no dispute that 'express advocacy' is not a vague term, and the controlling opinion in [*WRTL*] held the 'functional equivalent' or 'appeal to vote' component of this test also meets the 'imperative for clarity' that due process requires."  *Yamada*, 786 F.3d at 1190 (quoting *WRTL*, 551 U.S. at 474 n.7).  Thus, the Court held that the functional equivalent language was not unconstitutionally vague.  *Yamada*, 786 F.3d at 1191 ("We therefore join the First, Fourth and Tenth Circuits in holding that the 'appeal to vote' language is not unconstitutionally vague.")

As MCD acknowledges, Montana's statutory definition of "support or oppose" is limited to express advocacy and the functional equivalent of express advocacy.  Doc. 100, ¶ 77.  Subpart (a) limits the phrase to express advocacy: "using express words, including but not limited to 'vote', 'oppose', 'support',

---

[2] "'express advocacy' requires words 'such as "vote for," "elect," "support," "cast your ballot for," "Smith for Congress," "vote against," defeat," "reject,"' . . . and communications are the 'functional equivalent of express advocacy' only when they are 'susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate."  *Yamada*, 786 F.3d at 1189 (quoting *Buckley v. Valeo*, 424 U.S. 1, 44 n.52 and *Federal Election Commn. v. Wisconsin Right to Life*, 551 U.S. 449, 469-70 (2007) (opinion of Roberts, C.J.).

'elect', 'defeat', or 'reject', that call for the nomination, election, or defeat of one or more clearly identified candidates . . . ."  Mont. Code Ann. § 13-1-101(49). While subpart (b) limits the phrase to the functional equivalent of express advocacy:  referring to a clearly identified candidate in a way "susceptible of no reasonable interpretation other than as a call for the nomination, election, or defeat of the candidate . . . ."  *Id.*

Because "support or oppose" is limited to express advocacy and the functional equivalent of express advocacy, the use of the phrase in the definitions of "political committee," "expenditure," "contribution," and "electioneering communication" does not present a vagueness problem.  Under *Yamada*, this Court must reject MCD's challenge.

### B.   Referring to Defined Terms Within a Statutory Definition Does Not Render the Definitions Unconstitutionally Vague.

MCD additionally claims that "political committee," "expenditure," and "contribution" are vague because they refer to one another and are circular. MCD's contentions miss the mark.  The prohibition against vagueness does not invalidate statutes simply because they could have been more precisely drafted. *See Yamada*, 786 F.3d at 1187-88.  And "an unreasonable interpretation and dissection of a statute will not render it void for vagueness."  *State v. Watters*, 208 P.3d 408, ¶ 36 (Mont. 2009).  Rather, the test is whether a party could reasonably understand what the statute proscribes.  *Brumsickle*, 624 F.3d at 1019.

Here, reading the statutory definitions of political committee, expenditure, and contribution together, a party would reasonably understand that a political committee refers to a "combination of two or more individuals or a person other than an individual" who either (1) receives "an advance, gift, loan, conveyance, deposit, payment, or distribution of money or anything of value to support or oppose a candidate or a ballot issue" (contribution); or (2) makes a "purchase, payment, distribution, loan, advance, promise, pledge, or gift of money or anything of value" (expenditure) to support or oppose a candidate or ballot issue.  Mont. Code Ann. §§13-1-101(3), (9), (17).  There is nothing complicated about these definitions and the fact that the definitions refer to one another doesn't make them vague; on the contrary, the inclusion of the terms clarifies what types of individuals or groups the campaign finance laws are addressing:  candidates and political committees.

MCD's contentions that the definitions of political committee, contribution, and expenditure are vague are not reasonable.  Certainly, the laws are not so vague that they fail "to provide a reasonable opportunity to know what conduct is prohibited, or [are] so indefinite as to allow arbitrary and discriminatory enforcement."  *Brumsickle*, 624 F.3d at 1019.

## C.   Montana's Administrative Rules Do Not Permit Arbitrary and Discriminatory Enforcement, and Are Not Unconstitutionally Vague.

MCD also claims that the regulatory definitions of "political committee," "expenditure," and "contribution," and the political committee reporting requirements are vague because they contain the phrase "not limited to" or the word "may" in their definitions.  MCD asserts that these amorphous terms may lead to "regulatory mischief."  Doc. 100, Counts IV; IX; XII; XV.

### 1.   "Expenditure," "Contribution," "Political Committee" Definitions.

This Court must reject MCD's challenges because MCD is challenging regulations that were not adopted.  MCD challenges expenditure and contribution based on the phrase "includes, but is not limited to," which MCD asserts is part of these terms' definitions.  *See* Doc. 100, Counts XII; XV.  MCD's challenges must fail because the phrase "includes, but is not limited to" is not part of these definitions.  Mont. Admin. R. 44.11.401(1), .501(1) (2016).

Similarly, MCD's challenge to the "political committee" definition rests on the "*de minimis*" definition, but it again challenges a version that was not adopted.  MCD takes issue with the language allowing the Commissioner to determine, "on a case-by-case basis" that an act is *de minimis* based on a list of factors along with "other factors and circumstances the commissioner determines are relevant."

Doc. 100, ¶ 82.  This language does not appear in the rule.  Mont. Admin.
R. 44.11.603.

The phrases MCD challenges appeared in an earlier drafts of the rules, but
were not part of the rules adopted.  The "not limited to" and "case-by-case"
language was stricken entirely, and the "other factors and circumstances" was
amended significantly.  *See* 1 Mont. Admin. Register 36.  MCD' challenges to
language that doesn't exist highlight the lack of justiciability and establish that
Montana is entitled to summary judgment on these claims.

### 2.    Political-Committee Reporting Requirements.

MCD challenges the political committee reporting requirements based on the
phrase "includes but is not limited to" in "Reportable Election Activity"; the use of
"may" in the descriptions of incidental and independent committee reportable
election activity and in "Election activity"; and the lack of a definition for the word
"appeal."  Doc. 100, ¶¶ 132-35, 137 (Count IX).  These words do not render the
rules so indefinite that they would encourage arbitrary and discriminatory
enforcement, and thus, they are not unconstitutionally vague.

The word "may" "must be construed according to the context and the
approved usage of the language . . . ."  *Hardenburgh v. Hardenburgh*, 114 Mont.
469, 487, 146 P.2d 151 (Mont. 1944).  Here, "may" is limited to the factors that
follow.  For example, what "may" constitute reportable election activity for an

incidental committee is one or more of three enumerated activities set forth in Mont. Admin. R. 44.11.202(6); *accord* 44.11.202(7) (independent committees). A plain reading of the regulation does not suggest that there "may" be some other reportable election activity that is not listed.

Similarly, "election activity" is limited to what "may" be reportable under Title 13, but the rule cannot reasonably be understood as meaning that election activity means what "may" or "may not" be reportable under Title 13. That would be an unreasonable interpretation. MCD's quarrel to the "but not limited to" language is immaterial because, as even MCD recognizes, its ads "if circulated as desired, would likely be electioneering communications," (Doc. 100, ¶ 49), which are clearly included as reportable election activity. MCD faces no danger of arbitrary and discriminatory enforcement.

Finally, while the word "appeal" is not defined, its meaning is clear. For incidental committees, a reportable election activity may consist of "accepting one or more contributions in response to an appeal." Mont. Admin. R. 44.11.202(6)(c). In this context, "appeal" plainly means a request, which is the plain meaning of the word. *See The American Heritage Dictionary* 85 (5th ed., Houghton Mifflin Harcourt 2011) (defining "appeal" as "An earnest or urgent request[.]") This interpretation is also supported by the statute requiring incidental committees to disclose contributions made by a "contributor in response to an appeal by the

incidental committee for contributions . . . ."  Mont. Code Ann. § 13-37-232(1).

Interpreting "appeal" as request ensures that the laws relating to the same subject

are harmonized.  *Johnson*, ¶ 20.  The regulations are not unconstitutionally vague.

**D.     As Montana's Statutes Are Not Unconstitutionally Vague, MCD's Derivative Challenge to Montana's Regulations Must Fail.**

Apart from its vagueness challenge, MCD also challenges the regulatory

definition of "political committee," "expenditure," and "contribution" based on the

theory that the Commissioner cannot make law but only adopt rules that carry out

statutory provisions.  Doc. 100, Counts V; XIII; XVI.  MCD asserts that, because

the statutes are vague, then the rules must also be struck down.  *E.g.*, *Id*., ¶ 161

("Because the Expenditure Regulatory Definition is designed to help carry out and

enforce the facially vague Expenditure Statutory Definition, the Expenditure

Regulatory Definition should be struck down in its entirety as unconstitutional.")

MCD's challenges to the administrative rules are tied to, and depend on, its

vagueness challenges to Montana's definitions.  In other words, MCD's challenges

stand (or fall) on the success (or failure) of its other challenges.  As demonstrated

above, MCD's vagueness challenges fail; thus, its challenges to Montana's

regulations also fail.

**E.**   **MCD's Facial Challenge to Montana's Electioneering Communication Statute Fails Because There Are No Vagueness Concerns in Most Circumstances.**

Montana law defines an "electioneering communication" as a "paid communication that is publicly distributed by radio, television, cable, satellite, internet website, newspaper, periodical, billboard, mail, or any other distribution of printed materials, that is made within 60 days of the initiation of voting in an election, that does not support or oppose a candidate or ballot issue, that can be received by more than 100 recipients in the district voting on the candidate or ballot issue, and that" refers to or depicts a clearly identified candidate.  Mont. Code Ann. § 13-1-101(15)(a).

MCD contends that this definition is vague because whether a communication "can be received by more than 100 recipients in the district voting on the candidate or ballot issue" is "not ascertainable."  *See* Doc. 100, ¶ 135.  But as discussed above, in a facial challenge, a party can prevail only by "'establish[ing] that *no set of circumstances exists under which the Act would be valid*,' *i.e.*, that the law is unconstitutional in all of its applications."  *Washington State Grange*, 552 U.S. at 449.  (Emphasis added.)  MCD cannot meet this burden.

It is not difficult to find examples where it would be simple to determine if 100 recipients could receive a communication.  For example, a group wanting to communicate by mail would have control over how many mailers it distributed.  It

could choose to mail more than or less than 100 mailers.  In fact, MCD asserts that it plans to publish ads "that will likely reach more than 100 recipients in the district voting of the candidate mentioned within 60 days of the initiation of voting." Doc. 100, ¶ 40.  MCD's allegation forecloses its facial challenge.

Additionally, a group could learn how many recipients a communication might reach by asking the distributor or looking online.  For example, a simple web search reveals that KECI-13, an NBC affiliate in Missoula, and its sister stations cover approximately 45 percent of Montana and reach more than 175,000 TV households.[3]  A Billings Gazette advertisement can reach 85 percent of the Billings market using print and internet.[4]  Further, the statute requires a "paid communication."  It is incongruous that an entity would pay money to deliver a communication without ascertaining how many people would receive the communication.

Notably, the "electioneering communication" statute would be constitutional even with no numerical baseline.  The Seventh Circuit upheld a statute like Montana's that encompassed communications "targeted to the relevant electorate," without any numeric reference.  In rejecting a facial challenge, the Court agreed with Illinois that a "reasonable and constitutional construction of 'targeted to the

---

[3] *See* http://www.nbcmontana.com/keci/station-information.
[4] *See* https://billingsgazette-dot-com.bloxcms.com/forms/contact/advertise/

relevant electorate' means a broadcast communication receivable within the geographical area where potential voters on that candidate or issue live."
*Center for Individual Freedom v. Madigan*, 697 F.3d 464, 494 (7th Cir. 2012). The same could be said of Montana's statute with the addition that, if there are less than 100 recipients of the paid communication, then the communication will not constitute an electioneering communication.

MCD also asserts the statute is vague because it doesn't specify what type of reporting is required.  MCD simply misunderstands the statute.  The type of reporting depends on the entity engaging in electioneering communications.  If a group is an independent political committee, then it would report as an independent committee.  If it's a business that sells fly rods, then it would likely report as an incidental committee.  The reporting requirements are not vague.  At the least, MCD cannot establish that the laws would be "unconstitutional in all of its applications."  *Washington State Grange*, 552 U.S. at 449.

## IV.   THE STATE IS ENTITLED TO SUMMARY JUDGMENT ON MCD'S VIEWPOINT DISCRIMINATION AND EQUAL PROTECTION CLAIMS BECAUSE MCD HAS PRESENTED NO EVIDENCE OF IMPROPER MOTIVE.

MCD alleges that the Commissioner has engaged in unconstitutional viewpoint discrimination based on the political ideology of groups (Count 22, mis-numbered as XXI) and that he has treated groups unequally in his handling of

advisory opinions and complaints (Count 23, mis-numbered as XXII).  It is

difficult to respond to MCD's allegations because MCD has not challenged a

particular statute or pled a claim under 42 U.S.C. § 1983.  Nonetheless, Montana is

entitled to summary judgment because MCD cannot "establish the existence of an

element essential to that party's case, and on which that party will bear the burden

of proof at trial."  *Celotex*, 477 U.S. at 322.  Specifically, MCD has presented no

evidence showing that the Commissioner has acted with the *purpose* to

discriminate against MCD or with the *intent* to treat MCD unequally.

      To prevail on a viewpoint discrimination claim, a plaintiff must show that

the government defendant acted with *the purpose* to discriminate against a

particular viewpoint.  *Alpha Delta Chi-Delta Chapter v. Reed*, 648 F.3d 790, 801

(9th Cir. 2011).  It is not enough to show that a policy burdens one group over

another; rather, the plaintiff must show that the government implemented its policy

"for the *purpose* of suppressing Plaintiffs' viewpoint . . . ."  *Id*. (emphasis in

original).  In other words, a plaintiff must establish that the government's

discriminatory action was "*because of*, not merely in spite of," the plaintiff's

views.  *Moss v. United States Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009)

(emphasis in original).  Similarly, plaintiffs asserting an equal protection claim

"must show that the defendants acted with an intent or purpose to discriminate

against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

A plaintiff must establish the defendant's improper purpose through competent evidence, such as testimony from a witness with personal knowledge. For example, in *Carmen v. San Francisco Unified School District*, the Ninth Circuit found insufficient a plaintiff's statement that she believed the defendant had an improper purpose. 237 F.3d 1026, 1028 (9th Cir. 2001). The Court reasoned: "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Id*. Because the plaintiff failed to show personal knowledge of the defendant's allegedly improper motive, it was not competent evidence for summary judgment. *Id*. The Court succinctly stated: "It is not enough for a witness to tell all she knows; she must know all she tells." *Id*.

Here, MCD has presented no competent evidence showing that the Commissioner has addressed complaints or advisory opinions with "the purpose of suppressing [MCD's] viewpoint," or with the "intent or purpose to discriminate against [MCD] based upon membership in a protected class." *Reed*, 648 F.3d at 801; *Barren*, 152 F.3d at 1394. MCD's allegations that the Commissioner has treated groups "he likes" (*see* Doc. 100, ¶¶ 219, 223) better than other groups are

nothing more than conclusory allegations, which are insufficient.  *See Jeffers v. Gomez*, 267 F.3d 895, 911 (9th Cir. 2001) (citation and quotation marks omitted) ("to prevail on the motion for summary judgment, [the plaintiff] must put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury.")

Moreover, MCD president Bill Coate made clear that MCD's claims are based on "assumptions."  When asked what evidence MCD had that the Commissioner targeted candidates, Coate responded that he had visited the Commissioner's office and the only investigation files he saw were against conservative candidates.  Coate Dep. at 67-68.  Other than these files and campaign finance decisions listed in the Complaint, Coate was not aware of any evidence that supported MCD's allegations.  *Id*. at 69.  When asked what evidence showed that the Commissioner had profiled organizations, Coate referenced letters that the Commissioner sent to organizations and survey groups.  *Id*. at 69-71; *see* Docs. 100-15, 100-16.  Coate was not aware of any other evidence.  Coate Dep. at 70.  Coate admitted that MCD's allegation of "political profiling" was "[b]ased upon the assumption that I make, based on all the files that the [Commissioner] provided for myself and my attorney to look at."  *Id*. at 72.  Coate could point to no evidence outside MCD's Complaint to support his fear that MCD might be politically profiled.  *Id*. at 74.

Whatever MCD's subjective fears or beliefs may be, it has not brought forward competent evidence to show that the Commissioner has acted *with the purpose* to suppress MCD's viewpoint or to discriminate against MCD. To be clear, Defendants dispute that candidates or groups have been unequally burdened. But for summary judgment, that is immaterial. MCD has failed to "establish the existence of an element essential" that it must prove, and thus, this Court must grant summary judgment to Defendants. *Celotex*, 477 U.S. at 322.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant summary judgment to Defendants on all counts.

Respectfully submitted this 4th day of March, 2015.

> TIMOTHY C. FOX
> Montana Attorney General
> DALE SCHOWENGERDT
> Solicitor General
> MATTHEW T. COCHENOUR
> PATRICK M. RISKEN
> Assistant Attorneys General
> 215 North Sanders
> P.O. Box 201401
> Helena, MT 59620-1401
>
> */s/  Matthew T. Cochenour*
> MATTHEW T. COCHENOUR
> Assistant Attorney General
> Counsel for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date I electronically filed the foregoing

document with the clerk of the court for the United States District Court for the

District of Montana, using cm/ecf system.

Participants in the case who are registered cm/ecf users will be served by the

cm/ecf system.

Dated:  March 4, 2016          /s/  Matthew T. Cochenour
                                              MATTHEW T. COCHENOUR
                                              Assistant Attorney General
                                              Counsel for Defendants

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 6,453 words, excluding certificate of service and certificate of compliance.


        */s/ Matthew T. Cochenour*
        MATTHEW T. COCHENOUR
        Assistant Attorney General
        Counsel for Defendants