IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MONTANANS FOR COMMUNITY DEVELOPMENT, <br><br> Plaintiff, <br><br> vs. <br><br> JONATHAN MOTL, in his official capacity as Commissioner of Political Practices; TIMOTHY FOX, in his official capacity as Attorney General of the State of Montana, and LEO GALLAGHER, in his official capacity as Lewis and Clark County Attorney, <br><br> Defendants. | CV 14–55–H–DLC <br><br><br> ORDER |

Before the Court is Plaintiff Montanans for Community Development's ("MCD") motion to compel unredacted discovery materials. Specifically, MCD seeks the production of original copies of "watch files," "phone logs," and "investigative reports" prepared by employees of the Commissioner of Political Practices (the "COPP"). Defendants Jonathan Motl, Timothy Fox, and Leo Gallagher (collectively "Defendants") oppose this motion and argue that these documents are protected as attorney-client or work-product materials. For the reasons explained below, MCD's motion will be granted.

- 1 -

## I. Background

This case involves a constitutional challenge to Montana's election disclosure laws and the manner in which they have been enforced. This order, however, deals with the proper scope of discovery and whether the COPP shall be compelled to provide unredacted copies of various documents sought by MCD.

On September 1, 2015, MCD requested the production of copies of all "watch files," "phone logs," and "investigative reports" in the COPP's office. These documents were created by employees of the COPP following the receipt of complaints alleging violations of Montana's disclosure laws and the resulting investigations. The COPP responded to MCD's request and objected to production on the grounds that the request was "overly broad, overly burdensome, irrelevant, and does not appear calculated to lead to the discovery of admissible evidence." (Doc. 109-3 at 3.) The COPP also objected to the production of the "phone logs" and "investigative reports" on the grounds that these documents "may be protected from disclosure by both the attorney-client privilege and the work product doctrine."[1] (Doc. 109-3 at 5.) The COPP further objected on the

---

[1] Though MCD presently seeks disclosure of so-called "watch files," the COPP's responses to MCD's Second Request for Production state that these materials either no longer exist, have been incorporated into existing investigatory files, or were made available for review and copying. (Doc. 109-3 at 3–4.) As such, the Court considers this request moot and focuses the rest of its analysis on MCD's motion to compel production of the materials designated as "phone logs" or "investigative reports."

grounds that these materials contained confidential and personal information.

Curiously, without waiving its objections, the COPP further stated that MCD would be allowed to review these materials for a "modified in camera inspection." (Doc. 109-3 at 6,7.) The COPP provided that MCD could inspect and identify the particular "watch files" or "investigative reports" it wanted copied, and the COPP would provide copies of these documents after redacting information it deemed: (1) confidential; (2) personal in nature; (3) protected by attorney-client privilege; or (4) protected by the work-product doctrine.

In further emails between the parties, the COPP stated that an employee of the COPP would be present during the inspection and limited the inspection to only counsel for MCD. The latter limitation, the COPP stressed, would be implemented "to avoid inadvertently waiving confidentiality or privilege" by allowing private citizens to inspect these materials. (Doc. 109-4 at 10.) The COPP argued that allowing non-attorneys to view these materials, such as MCD's President Bill Coate, would enable these individuals to later testify about the materials at trial, implicating confidentially and privilege concerns.

Over the next few months, counsel for MCD made four trips to the COPP's office for inspections. During these inspections, MCD's counsel was not allowed to take notes. MCD further states that its attorney was never required to sign a

non-disclosure or confidentiality agreement.

In late 2015 and early 2016, MCD received redacted responsive documents from the COPP concerning the materials requested. MCD also received a privilege log from the COPP asserting multiple privileges, including attorney-client and work-product privilege. Shortly after receiving these redacted materials, MCD contacted the COPP by letter asserting that it had waived any privilege it now claims when it allowed MCD's attorney to inspect these materials.

Defendants responded to this assertion by pointing out that MCD was made aware of the COPP's confidentiality and privilege concerns during the parties' correspondences. Further, MCD was made aware of the confidentiality and privilege concerns in-person when the materials were inspected. Defendants then appear to assert that because the COPP gave notice of its confidentiality and privilege concerns, and MCD did not object, MCD entered into an informal confidentiality and privilege agreement. MCD now argues before this Court that Defendants waived any privilege for these materials and moves to compel their production.

## II. Analysis

Federal Rule of Evidence 37 allows a party seeking mandatory Rule 26(a) disclosures to move for an order compelling their production. Fed. R. Civ. P.

37(a)(1)(a). The party resisting "discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998) (citation omitted). In their brief in opposition to the motion to compel, Defendants maintain that the documents sought by MCD are privileged materials and protected from disclosure pursuant to the attorney-client privilege and work-product rule. The Court will address each of these claimed protections separately.

### A. Attorney-Client Privilege

Defendants assert that the vast majority of the documents requested by MCD are protected by the attorney-client privilege. In particular, Defendants maintain that notebooks and investigative reports prepared by COPP staff during the investigation of alleged disclosure violations constitute attorney-client communications. COPP staff, Defendants argue, should be likened to agents of COPP's attorneys. As a result, their communications with these attorneys and Commissioner Jonathan Motl, i.e. the client, are protected as privileged. Defendants further argue that this privilege was not waived by allowing MCD counsel to inspect these materials because this disclosure was not intentional under Federal Rule of Evidence 502(a)(1). Defendants further cite to

communications with MCD where the COPP explained its confidentially policies and its understanding that allowing MCD's counsel to view these files would not waive the privilege.

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). This privilege "is intended to encourage clients to make full disclosure to their attorneys, recognizing that sound advice depends" on fully informed lawyers. *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (citing *Upjohn Co.*, 449 U.S. at 389 (internal quotation marks omitted). "The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication." *Richey*, 632 F.3d at 566. This privilege, however, may be waived. *Hernandez*, 604 F.3d at 1100. As the Ninth Circuit clarified,

> The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness. Its principal purpose is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable. For this reason we have admonished that the focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the attorney-client relationship,

not the holder's intent to waive the privilege.

*Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340–341 (9th Cir. 1996).

Here, Defendants, as the party asserting an attorney-client relationship, retain the burden of establishing this privilege. However, even if Defendants could meet their burden, of which the Court is highly skeptical, Defendants have waived their privilege. In contrast to Defendants' argument that its disclosure was not intentional under Federal Rule of Evidence 502(a)(1), the above case law makes clear that the focus of the Court's inquiry must be on the intentional act of disclosure to individuals outside the attorney-client relationship, not the privilege holder's subjective intent. *Tennenbaum,* 77 F.3d at 341; *see also Bittaker v. Woodford*, 331 F.3d 715, 720 n. 4 (9th Cir. 2003) (providing that "an express waiver need not be effectuated by words or accompanied by the litigant's subjective intent") (citations omitted).

Thus, even the Commissioner did not intend to waive the privilege by allowing MCD to view the notebooks and investigative reports, the act of allowing the inspection to take place results in a waiver by voluntary disclosure. *Id.* at 720 (stating that "once documents have been turned over to another party voluntarily, the privilege is gone, and the litigant may not thereafter reassert it to block discovery of the information and related communications by his adversaries").

Accordingly, because the Commissioner allowed MCD to inspect these materials, Defendants have waived any privilege they may have had. As a result, MCD's motion to compel will be granted as to any materials inspected by MCD's attorney and subsequently designated in the privilege log as protected attorney-client materials. Finally, the Court stresses that in compelling the disclosure of these materials, the Court makes no pronouncements about the admissibility of this evidence at trial.

**B. Work Product Privilege**

Similar to the above discussion, Defendants also assert that many of the materials sought by MCD, in particular COPP's investigatory files, are protected under the work-product doctrine, as enumerated in Federal Rule of Civil Procedure 26(b)(3). This Rule provides that,

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But ... those materials may be discovered if:
>     (i) they are otherwise discoverable under Rule 26(b)(1); and
>     (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A). Thus, "[t]he work-product doctrine is a 'qualified privilege' that protects 'certain materials prepared by an attorney acting for his

client in anticipation of litigation.'" *Hernandez*, 604 F.3d at 1100 (quoting *United States v. Nobles*, 422 U.S. 225, 237 (1975). These protections extend to an "investigator working for attorneys, provided the documents were created in anticipation of litigation." *In re Grand Jury Subp. (Mark Torf/Torf Envtl. Mgt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (citing *Nobles*, 422 U.S. at 239).

Here, Defendants maintain that, due to the adversarial nature of the COPP's complaint and investigation process, documents and materials created by COPP staff, i.e., COPP's agents, are defacto "documents and tangible things . . . prepared in anticipation of litigation" and are protected from disclosure. The Court questions Defendants' wide-reaching and all encompassing approach to these protections. However, like the attorney-client privilege discussed above, even if these files were protected by the work-product doctrine, these protections may be waived. *Hernandez*, 604 F.3d at 1100.

"At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Nobles*, 422 U.S. at 239. Unlike the attorney-client privilege which seeks to "protect [] evidence from disclosure to the outside world," the work-product doctrine protects work product materials from disclosure to opposing counsel. Charles Alan Wright et al., *Federal Practice and Procedure* vol. 8, §

2024, 531–532 (3d ed., West 2005).  Accordingly, "[i]f documents otherwise protected by the work-product rule have been disclosed to others with an actual intention that an opposing party may see the documents, the party who made the disclosure should not subsequently be able to claim protection for the documents as work product."  *Id.* at 530.

Here, the COPP allowed opposing counsel to view the materials it now claims are protected under this doctrine.  These actions and subsequent asserted protections violate the spirit of this doctrine.  Further, allowing opposing counsel to view these materials under the theory that she would not be able to testify to their contents puts MCD's counsel in a precarious and unfair position.  Counsel for MCD must now choose between continued representation of her client, which would prevent her from testifying as to the contents of the redacted materials, or withdrawing as counsel in order to testify.  The Court finds that Defendants actions weigh in favor of a finding of waiver.  Thus, Defendants waived the protections afforded by the work-product rule when it allowed MCD's counsel to inspect these materials.  MCD's motion will be granted.  Further, as stated above, in compelling the production of these materials, the Court reserves judgment concerning the admissibility of this evidence at trial.

Lastly, the Court finds it necessary to address Defendants' argument that,

even if these materials were disclosed to MCD's attorney, these disclosures were not intentional as contemplated in Federal Rule of Evidence 502(a)(1). Defendants rely on the COPP's correspondence with MCD as evidence of its lack of intention to waive the privilege. Notwithstanding this argument, if permitting opposing counsel to view these materials was not an intentional waiver of privilege under Rule 502(a)(1), logic dictates that these inspections would amount to an inadvertent disclosure as described in Rule 502(b)(1). However, in order for these disclosures to be considered a non-waiver of the privilege, the COPP must show that it took reasonable steps to prevent the disclosure of the material. Fed. R. Evid. 502(b)(2); see also Explanatory Note to 502(b) (stating that "considerations bearing on the reasonableness of a producing party's efforts include the number of documents to be reviewed and the time constraints for production").

    Here, the issue at bar does not involve a situation where protected materials were inadvertently disclosed through the production of thousands of documents. Instead, the COPP intentionally allowed MCD's counsel to view these protected documents under a vague and one sided understanding that the privilege would not be waived. The Court finds Defendants' non-waiver argument unavailing. Accordingly, MCD's motion to compel will be granted as to any materials

inspected by MCD's attorney and subsequently designated in the privilege log as protected work product materials.²

### III. Confidentiality

Despite the Court's findings that the privilege has been waived for the materials described above, the Court recognizes the good-faith efforts of Defendants to protect the confidentiality of these materials. The Court further appreciates the sensitive nature of the documents contained in the COPP staff notebooks and investigatory reports. These materials contain politically charged information involving accusations and complaints of allegedly unlawful conduct by Montana's elected officials and political candidates. If these materials were freely available to the public, the potential exists for non-parties to this suit to be annoyed, embarrassed, or oppressed by allegations and information that may not even be true. *See* Fed. R. Civ. P. 26(c)(1) (stating that for good cause, a court may "issue an order to protect a . . . person from annoyance, embarrassment, [or] oppression"). As such, the Court will order MCD and its attorneys to maintain the confidentiality of these materials and to prevent distribution of this discovery to

---

² Defendants also make the argument that Montana District Court Judge Jeffery Sherlock's December 5, 2014, order on discovery has already determined that the materials sought by MCD are privileged. *COPP v. Wittich*, BDV-2014-251, Montana First Judicial District, Lewis and Clark County (December 5, 2014). Because the Court finds that Defendants have waived any privilege they may have had over these materials, the Court declines to address Defendants' argument.

third parties.  The Court issues this order under its inherent authority to manage its "affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–631 (1962)).

Accordingly, IT IS ORDERED that Plaintiff's motion to compel (Doc. 108) is GRANTED in accordance with the above Order.

IT IS FURTHER ORDERED that ALL DISCOVERY PERMITTED UNDER THIS ORDER SHALL BE MAINTAINED AS CONFIDENTIAL BY THE PARTIES AND THEIR COUNSEL, SHALL BE USED ONLY FOR THE PURPOSES OF THIS LAWSUIT, AND SHALL NOT BE DISTRIBUTED TO THIRD PARTIES NOT JOINED IN THIS ACTION OR THEIR REPRESENTATIVES.

Dated this 10th day of March, 2016.

Dana L. Christensen, Chief District Judge
United States District Court